1                    UNITED STATES DISTRICT COURT

2                         DISTRICT OF MAINE

3

4    UNITED STATES OF AMERICA      )        CRIMINAL ACTION
                                   )
5                                  )     Docket No. 98-54-P-H
                                   )
6              v.                  )
                                   )
7    CHARLES HALL,                 )
                                   )
8                   Defendant.     )

9

10                    TRANSCRIPT OF PROCEEDINGS

11        Pursuant to notice, the above-entitled matter came on

12   for Sentencing Hearing before the HON. D. BROCK HORNBY,

13   in the United States District Court, Portland, Maine, on the

14   19th day of January, 1999, at 9:38 a.m.

15

16

17

18   APPEARANCES:

19   For the Government:              Helene Kazanjian, Esquire

20   For the Defendant:               Bruce Merrill, Esquire

21

22
                              Cindy Packard, RMR
23                         Official Court Reporter

24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer.

 1   (At 9:38 a.m., defendant present in open court with his

 2   counsel, the following proceedings transpired.)

 3            THE COURT:  Good morning.  The matter on for

 4   hearing at this time is Criminal Number 98-54-P-H, United

 5   States v. Charles Hall.

 6        Mr. Merrill, would you and your client, Mr. Hall,

 7   please stand.

 8        The purpose of the hearing this morning, Mr. Hall, is

 9   for me to sentence you.  But before I do that, I'm going to

10   hear from your lawyer.  I'll hear from the government

11   lawyer.  I'll hear from you, if you wish to speak to me.

12        I'm going to start by asking some questions of you and

13   your lawyer so that I can be sure you have read and

14   discussed with him the presentence report as well as the

15   orders that I issued on January 12 after I met with your

16   lawyer and the government lawyer so that I can be sure I

17   know what is in dispute and what is not in dispute before I

18   apply the guideline sentencing provisions.

19        First of all, Mr. Merrill, have you read and discussed

20   with Mr. Hall the presentence report and my orders listing

21   what is disputed and what is undisputed?

22            MR. MERRILL:  Yes, I have, Your Honor.

23            THE COURT:  Did you have enough time to do that?

24            MR. MERRILL:  Yes, we did, Your Honor.  Thank you.

25            THE COURT:  Mr. Hall, have you used any drugs or

1    alcohol in the last 24 hours?

2            MR. HALL:  No, Your Honor.

3            THE COURT:  Are you currently taking any

4    medicines?

5            MR. HALL:  Yes.

6            THE COURT:  Would you tell me the medicines that

7    you're taking?

8            MR. HALL:  Pentasa, folic acid, Carafate, Zantac,

9    prednisone.  I think that's it.

10           THE COURT:  Are those all medicines that are

11   prescribed for you?

12           MR. HALL:  Yes, they are.

13           THE COURT:  Are you taking them in the prescribed

14   doses?

15           MR. HALL:  Yes, I am.

16           THE COURT:  Does taking those medicines prevent

17   you from making decisions?

18           MR. HALL:  No.

19           THE COURT:  Does it prevent you from understanding

20   what's happening here today?

21           MR. HALL:  No, Your Honor.

22           THE COURT:  Okay.  Have you read and discussed the

23   presentence report with your lawyer?

24           MR. HALL:  Yes, I have.

25           THE COURT:  Did you have enough time to do that?

1               MR. HALL:  Yes, I did.  Thank you.

2               THE COURT:  Now, I met with your lawyer and the

3     government back on January 12.  And as a result of that

4     conference, I understand there's no dispute as to the

5     findings in the presentence report.

6          The only dispute is whether there should be an upward

7     departure or where within the guideline range to sentence

8     you.  Is that your understanding as well?

9               MR. HALL:  Yes, Your Honor.

10              THE COURT:  Is there any other issue you -- is

11    there any issue you believe I need to resolve in connection

12    with imposing sentence?

13              MR. HALL:  No, Your Honor.

14              THE COURT:  All right.  Thank you.  You can be

15    seated.  I'll hear from the lawyers.

16         Counsel, just before you begin, I believe that you

17    agreed with this in the presentence conference.  I want to

18    be sure.  Under 5G1.3, any sentence in this matter must be

19    consecutive to the current sentence that the defendant is

20    serving in state facilities; is that correct?

21              MR. MERRILL:  That's correct, Your Honor.

22              MS. KAZANJIAN:  That's correct, Your Honor.

23              THE COURT:  All right.  And the government

24    indicated it's not seeking a departure; correct?

25              MS. KAZANJIAN:  That's correct, Your Honor.

 1          THE COURT:  In light of the consecutiveness

 2     requirement, the court does not intend to depart upward on

 3     its own motion.  And so in that context, I'll hear first

 4     from the government on sentence.

 5          MS. KAZANJIAN:  Yes, Your Honor.  The government

 6     would recommend a sentence in the upper end of the

 7     guidelines, but I would recommend a sentence of 42 or 43

 8     months.

 9          The basis for that recommendation is the following:

10     The defendant -- this is clearly a very serious offense.

11     The defendant has a very serious criminal history.  The

12     criminal history consists primarily of burglaries and

13     thefts.

14          This particular case is obviously a threat case.

15     Several of the aspects of this case which make it

16     particularly serious have been taken into consideration in

17     the enhancement already.  There has been an enhancement for

18     threatening a government official.  There has been an

19     enhancement in this case for more than one communication and

20     threatening communication.

21          We think those two factors have been taken into

22     consideration by the enhancements.  Those are clearly

23     important factors for the court to consider in terms of the

24     seriousness of this offense.

25          There were more than two.  In fact, there were three

1    communications.  So it's just one more than the enhancement.

2    Based on the nature of the threats, which certainly were

3    very, very serious, the fact they were made to a United

4    States District Court Judge is again, very, very serious and

5    frightening for everyone involved.

6         The fact that threats were made over and over again,

7    you know, more than once clearly indicate that the

8    individual was not understanding the seriousness of what he

9    was doing.  It's repeated act conduct.

10        So we would ask for a sentence in the range of 42 or 43

11   months.  We would not -- we just have looked at the nature

12   of the offense, the types of threats, whether the evidence

13   or lack of evidence, that there was anything done to carry

14   out the actual threats.

15        And under all those circumstances, that's where we

16   would place our recommendation.  We would ask the court to

17   impose the maximum term of supervised release to follow the

18   sentence that the court imposes.

19             THE COURT:  Thank you, Ms. Kazanjian.

20   Mr. Merrill, for the defendant.

21             MR. MERRILL:  Your Honor, I would ask that the

22   court sentence Mr. Hall at the bottom of the guideline

23   range.  He's looking at 37 to 46 months.  It's going to be

24   consecutive to the state sentence that he's serving already.

25        His release date in the state system is not until 2004.

1    And he would have to do another 37 months after that.

2        It is clear from the investigation of this case that

3    there was never -- Mr. Hall never had the wherewithal to

4    carry out anything he was saying in the letter.  The way

5    that this occurred is that when the one letter -- or I guess

6    the third letter came to Judge Carter, which was sent to the

7    FBI, it indicated if I don't hear from you by Friday,

8    something is going to happen.

9        The FBI went out to speak to Mr. Hall.  Mr. Hall said

10   he wanted an attorney.  I went up to visit him the next day.

11   He agreed to speak to the FBI.  He had already placed a call

12   to his girlfriend and notified the FBI that nothing was

13   going to happen.  He didn't have anything.

14       It boils down to the fact that rightly or wrongly, he

15   was venting.  I mean, Mr. Hall has been incarcerated -- he's

16   27 years old.  He's been incarcerated for most of his life

17   since he's been 17 years old.

18       He is facing or serving an eight-year sentence for

19   burglary right now.  And I think it was just one of those

20   days where he was frustrated.  He sent a letter.  He didn't

21   get a response.  So he sent another letter.  But he never

22   had the ability to do anything.  He never intended to do

23   anything.

24       We immediately spoke to Agent Osterrieder.  He

25   explained to him there was nobody on the outside.  There was

1    nobody that was working with him.  Agent Osterrieder wanted

2    to know how he knew the addresses of all these post offices.

3    He said they happen to be towns where I grew up.  They

4    happen to be towns where I grew up, and I knew the

5    addresses.

6         They wanted to know where they got Judge Carter's

7    address.  He said I got it in the prisoner's self-help

8    manual.  It was all information that was available to him.

9    He was upset about the fact that in his view, sexual

10   predators weren't being sentenced properly and all of the

11   court's resources were going to drug cases.

12        And he was upset about that.  And I'm not suggesting

13   this was the right way to go about it, but he was

14   essentially venting.

15        But you have a young man who at 27 already qualifies as

16   a career offender.  He's already at a Category VI.  And this

17   is going to be a consecutive sentence.  So at the earliest,

18   it's going to be 2007 or 2008 when Mr. Hall is going to be

19   released.

20        And for what he did here, which was to send a letter to

21   the Judge, I know that's wrong, but it's not like he robbed

22   a bank.  It's not like he actually committed any violence

23   against anybody.  He was incarcerated at the time.

24        He didn't have the ability to do anything other than to

25   write these letters.  There was never even any suspicion

1    behind it.  He signed his name to the letters.  He put his

2    return address on the envelopes.  It wasn't like he was

3    hiding who he was or sending anonymous letters containing

4    these threats.  He said I'm Charles Hall, I'm up at Windham.

5    I'm upset about the way you're sentencing people.  I want to

6    see something done about it.

7         And I think that an appropriate sentence in this case,

8    since it is going to be consecutive, would be the bottom

9    line of the range, which would be 37 months.

10             THE COURT:  Thank you, Mr. Merrill.

11        Mr. Hall, as a defendant before me for sentencing, you

12   have the right to speak to me yourself, to tell me anything

13   you want me to know, especially anything that might lead me

14   to be more lenient with you.  I invite you to do that.

15             MR. HALL:  Well, Your Honor.  Well, I apologize to

16   the court for the actions that I have committed.  You know,

17   I never intended for anybody to actually be assaulted or

18   insulted by the letters.  I realize what I did was wrong.  I

19   believe my lawyer spoke basically everything that I need to

20   say.  Not really much more I can add to it, you know, other

21   than I am sorry for what I've done.

22             THE COURT:  Thank you, Mr. Hall.

23             MR. MERRILL:  I would just add, Your Honor, that

24   in the -- I've been representing Mr. Hall since this

25   occurred back in late July or beginning of August.  And what

```
 1    I found is sometimes, he has an impulse control problem.

 2         Something bothers him, he suffers from Crohn's disease,

 3    and I've seen this because of the mismedication that he's

 4    gotten while he's been at the Cumberland County Jail, he

 5    doesn't handle the stress very well.

 6         He reacts.  He'll call me up sometimes and be very

 7    upset.  And then by the time I get to see him the next day,

 8    it's okay.  But he doesn't -- I think there's an impulse

 9    control problem that he doesn't deal with things the way

10    that some of us would.  He has a tendency to build up steam

11    and blow rather than just counting to 10, as they say, and

12    reflecting on what he's going to do.  I would ask the court

13    to take that into consideration also.

14              THE COURT:  Thank you.  You may be seated.

15    Anything further from the government?

16              MS. KAZANJIAN:  Nothing further.

17              THE COURT:  All right.  Let me see the probation

18    officer.

19    (The court and Mr. Storms confer.)

20              THE COURT:  There's no plea agreement; correct?

21              MR. MERRILL:  Excuse me, Your Honor?

22              THE COURT:  There's no plea agreement; correct?

23              MR. MERRILL:  That's correct, Your Honor.

24              THE COURT:  I've previously read the presentence

25    report in this matter, and now that I've heard the
```

1   presentations of the lawyers and the comments of Mr. Hall

2   himself, I'm prepared to make my findings of fact and

3   conclusions of law and to impose sentence.

4        At this time I incorporate on the record the undisputed

5   findings of January 12, 1999, as the guideline findings.

6        Are there any errors or omissions in the findings, from

7   the government?

8             MS. KAZANJIAN:  No, Your Honor.

9             THE COURT:  From the defendant?

10            MR. MERRILL:  None, Your Honor.

11            THE COURT:  Mr. Hall, let me explain the sentence

12   I'm going to impose before I actually impose it.  Your

13   lawyer has said, and you've said, and I believe it that you

14   weren't in a position to carry out the threats.

15        But the evil of threats is that they take the law

16   enforcement resources and require law enforcement personnel

17   to treat the threat as real because they've got to do the

18   investigation and be sure.

19        There's no way to know when the threats are first made

20   whether they're real or not.  So, in fact, they divert all

21   those law enforcement resources from where they ought to be

22   directed, which is getting at folks who really are

23   committing crimes.  So threats in our society are a very

24   real problem and that require punishment so that people do

25   not continue to carry them out.

1        Now, you know coming into this that I had kept open the

2   possibility of departing upward because you, although you're

3   still a young man, have accumulated a tremendous criminal

4   history that shows you have a real problem with abiding with

5   the law.

6        As I announced at the beginning of the hearing today,

7   I'm not going to depart upward because whatever I do has got

8   to be consecutive in any event, but there's no question in

9   my mind that you, given your current situation, are someone

10  who has a problem with complying with the law.

11       And so I conclude that the 43 months that the

12  government has recommended is an appropriate sentence.  I

13  thought seriously about sentencing you at the very high end

14  of the range in light of the fact that you're already a

15  career offender, that in light of the fact that you have

16  this long list of previous crimes, but as has been pointed

17  out, this is the first time you've been involved with a

18  threatening-type of crime.

19       And so I conclude that, in fact, the 43 months as a

20  consecutive sentence will be adequate to reflect the

21  seriousness of what you've done and also to protect society

22  from continuing to do it further.

23       So at this time, the defendant will stand for

24  sentencing.

25       The defendant is hereby committed to the custody of the

1   United States Bureau of Prisons to be imprisoned for a total

2   term of 43 months.

3          This sentence shall be served consecutively to the

4   sentence the defendant is now serving in state facilities

5   for the conviction under Maine Docket Number 96-590.

6          The defendant is remanded to the custody of the United

7   States Marshal.

8          Upon his release from prison, the defendant shall be on

9   supervised release for a term of three years.

10          He shall report to the probation office in the district

11   to which he is released within 72 hours of his release.

12          He shall not commit another federal, state or local

13   crime.

14          He shall not illegally possess a controlled substance.

15          He shall refrain from any unlawful use of a controlled

16   substance.

17          He shall submit to one drug test within 15 days of his

18   release from prison, and at least two periodic drug tests

19   thereafter as directed by the supervising officer.

20          He shall not possess a firearm.

21          The defendant shall comply with the standard conditions

22   adopted by this court and the following additional

23   conditions:

24          He shall submit to testing for use of drugs and

25   intoxicants on demand of the supervising officer.

 1          Criminal monetary penalties are the special assessment

 2     of $100 on Count One.  I find that the defendant does not

 3     have the ability to pay any fines.  I therefore waive all

 4     fines in this case.

 5          Payment of the special assessment is due and payable in

 6     full immediately.

 7          Mr. Hall, you have the right to appeal the sentence

 8     that I've just imposed.  In order to do that, you have to

 9     file with the clerk of this court within 10 days from today

10     a written notice of appeal.

11          If you fail to do that, you'll lose your right of

12     appeal.  Then there's nothing I can do or the Court of

13     Appeals can do to reinstate it.

14          If you want to appeal your sentence and cannot get your

15     lawyer to file the notice for you, you can request that the

16     clerk of the court file the notice on your behalf, and the

17     clerk will do that, but it has to be within the 10 days.

18          And, in fact, if you want, you can ask right now here

19     in open court that the clerk file the notice on your behalf,

20     and the clerk will do that.

21          If you cannot afford to prepay the costs of taking the

22     appeal, you can request permission to proceed without

23     prepaying costs, and if you qualify financially, you'll be

24     permitted to do that.

25          Do you understand what I've told you?

```
 1            MR. HALL:  Yes, I do, Your Honor.

 2            THE COURT:  Anything further from the defendant,

 3   Mr. Merrill?

 4            MR. MERRILL:  Nothing, Your Honor.

 5            THE COURT:  From the government, Ms. Kazanjian?

 6            MS. KAZANJIAN:  Nothing further.

 7            THE COURT:  Thank you both, counsel.  The court

 8   will stand in recess.

 9   (At 9:55 a.m., the foregoing proceedings were concluded.)

10                         - - - - -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        CERTIFICATE

2

3

4        I hereby certify that the foregoing is a true and

5   correct transcript of my stenographic notes of the

6   proceedings held in the above-entitled matter.

7        Dated this 13th day of November, 2013.

8
                              /s/ Cindy Packard
9                             Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

This document was created with Win2PDF available at http://www.win2pdf.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.
This page will not be added after purchasing Win2PDF.